NOTICE

Decision filed 02/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230139-U

NO. 5-23-0139

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 80-CF-5 |
| | ) | |
| RICHARD HOLMAN, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CLARKE* delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court erred when it vacated its original order granting the defendant leave to file his successive postconviction petition after a third-stage evidentiary hearing was held; however, the defendant has failed to make a *prima facie* showing of cause for his failure to bring his proportionate penalties claim in an earlier proceeding.

¶ 2    Following a third-stage evidentiary hearing under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), the circuit court *sua sponte* vacated its order granting the defendant, Richard Holman, leave to file his successive postconviction petition. The defendant appeals, arguing that the circuit court erred in *sua sponte* vacating its order granting leave.

_____

*Justice Moore was originally assigned to the panel before his retirement. Justice Clarke was substituted on the panel and has listened to oral arguments and read the briefs.

1

Additionally, he argues the merits of his proportionate penalties cause claim. For the reasons that follow, we affirm in part and reverse in part.

¶ 3                              I. BACKGROUND

¶ 4     The facts necessary to our disposition of this appeal are as follows. On July 13, 1979, 83-year-old Esther Sepmeyer was found dead in her home. At the time the crime was committed, the defendant was 17 years old. It was determined that Sepmeyer's home had been ransacked, and she had been shot in the side of the head with her own rifle. Both the defendant and his codefendant, Girvies Davis, were arrested for the murder. During the investigation, the defendant's fingerprints were found on the cabinet where Sepmeyer stored the rifle. In March 1981, the defendant was convicted of Sepmeyer's murder following a joint jury trial with his codefendant. On April 24, 1981, the defendant was sentenced to natural life in prison.

¶ 5     On direct appeal, the defendant argued that he was denied his statutory right to a speedy trial, that his trial should have been severed from his codefendant's, that he was denied effective assistance of counsel, and that the court should have inquired into his competency to stand trial. This court affirmed, finding no violation of speedy trial, that the defendant was not denied effective assistance of counsel, and that the trial court was not required to inquire into his competency to stand trial. See *People v. Holman*, 115 Ill. App. 3d 60 (1983).

¶ 6     On April 4, 2001, the defendant filed a petition for postconviction relief, arguing that his natural-life sentence was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On September 5, 2001, the trial court entered a written order dismissing the petition. The defendant subsequently appealed, but the appeal was later dismissed. *People v. Holman*, No. 5-01-0783 (2002) (unpublished order).

¶ 7 On December 26, 2001, the defendant filed a second petition for postconviction relief, arguing that the statute under which he had been sentenced had been enacted in violation of the single-subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). On May 1, 2002, the circuit court entered a written order dismissing the petition. The defendant subsequently appealed, but the appeal was later dismissed. *People v. Holman*, No. 5-02-0370 (2002) (unpublished order).

¶ 8 On August 14, 2009, the defendant filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)). In the petition, the defendant argued that his sentence was void because the trial court erroneously imposed a mandatory natural-life term. This court affirmed the circuit court's sentence, finding that the court had the discretion to impose a natural-life sentence and the court used that discretion in fashioning the defendant's sentence accordingly. See *People v. Holman*, 2011 IL App (5th) 090678-U.

¶ 9 On October 7, 2010, the defendant filed a third petition for postconviction relief and a motion for leave to file the petition. In the third petition, the defendant alleged that the statute under which he had been sentenced was unconstitutional, that the procedure by which he had been sentenced was unconstitutional, and that he was "actually innocent" of the "invalid aggravating factors" upon which his sentence had been based. On November 10, 2010, the circuit court entered a written order denying the defendant's motion for leave to file his third petition for postconviction relief. The circuit court found that the constitutional claims set forth in the third petition could have been raised in the defendant's prior petitions, and that the defendant failed to satisfy the "cause" prong of the cause-and-prejudice test. The court further noted that the defendant's purported claim of "actual innocence" was that he was not "eligible for the sentence [he] received." The defendant appealed the circuit court's dismissal, and this court determined that the circuit court properly

3

denied the defendant's leave to file a third petition for postconviction relief because the defendant failed to satisfy the "cause" component of the cause-and-prejudice test. Furthermore, this court held that the defendant's actual-innocence claim was not an actual-innocence claim at all. See *People v. Holman*, 2012 IL App (5th) 100587-U.

¶ 10    The defendant appealed this court's decision, and on January 28, 2015, the Illinois Supreme Court directed this court to reconsider the judgment in light of *People v. Davis*, 2014 IL 115595. This court reaffirmed its prior holding that the circuit court properly denied the defendant's petition for leave to file a successive petition. See *People v. Holman*, 2016 IL App (5th) 100587-B.

¶ 11    The defendant appealed, and on September 21, 2017, the Illinois Supreme Court extended *Miller v. Alabama*, finding that life sentences for juvenile defendants, whether mandatory or discretionary, are "disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." *People v. Holman*, 2017 IL 120655, ¶ 40. However, the court determined that, in the defendant's case, the original sentencing complied with *Miller* and the Madison County circuit court's decision to deny the defendant's petition for leave to file a successive petition was not in error. *Id.* ¶ 53. In doing so, the court determined that the trial court was aware that the defendant was 17; it considered the presentence investigation report (PSI) and psychological reports, which included family background, mental functioning, susceptibility to peer pressure, and prospects for rehabilitation; and the trial court considered the arguments presented during the sentencing hearing. *Id.* ¶¶ 48-50. The court also determined that the Madison County circuit court's decision to deny the defendant's petition for leave to file a successive petition was not in error. *Id.* However, in *People v. Wilson*, 2023 IL 127666, the Illinois Supreme Court reversed its decision, holding that *Holman* was inconsistent with the U.S. Supreme Court's decision in *Jones v. Mississippi*, which clarified that the Constitution does not require an

4

explicit finding of permanent incorrigibility so long as the sentencing court has discretion to consider youth and its mitigating qualities. *Jones v. Mississippi*, 593 U.S. 98, 104-05 (2021); *Wilson*, 2023 IL 127666, ¶ 42.

¶ 12    On September 20, 2019, the defendant filed a motion for leave to file a fourth successive petition, which is the subject of this appeal, and attached his proposed successive petition as an exhibit to the motion. In the defendant's fourth petition, he alleged that his life sentence without the possibility of parole violated the proportionate penalties clause of article I, section 11, of the Illinois Constitution. In making this claim, the defendant relied on *People v. Othman*, 2019 IL App (1st) 150823. The defendant further alleged that he met the cause-and-prejudice requirement to file his successive petition. The defendant argued that he demonstrated cause by identifying changes in Illinois sentencing law since he last filed a petition, but he could not have relied on them until the filing of the current petition. The defendant argued that he established prejudice by being sentenced without the trial court adequately considering his youth and rehabilitative potential.

¶ 13    On December 9, 2019, the circuit court granted the defendant's motion, and the defendant filed his successive petition. The State, on July 6, 2020, filed a motion to dismiss the petition, arguing that the defendant did not demonstrate cause and prejudice to raise his claim, and that the claim was barred by waiver and *res judicata*, as the Illinois Supreme Court had already reviewed a constitutional challenge to his sentence as raised in his third petition and affirmed. On August 7, 2020, and then later on November 20, 2020, the defendant filed memorandums of law in opposition to the State's motion to dismiss, arguing that the claim was not barred by waiver and *res judicata* because the proportionate penalties clause affords him greater protection than the eighth amendment, and that his sentence should be vacated.

¶ 14　On January 26, 2021, the circuit court held a hearing on the State's motion and took the arguments under advisement. On June 2, 2021, the circuit court found that the defendant had "made a substantial showing of a potential constitutional right based on the recent case law regarding juvenile offenders." The circuit court denied the State's motion to dismiss and advanced the matter to a third-stage evidentiary hearing.[1]

¶ 15　On February 22, 2022, the circuit court held the third-stage evidentiary hearing during which the defendant argued that his sentence violates the proportionate penalties clause because his sentence was imposed without reference to the objective of restoring him to a useful citizen. At the hearing, the defendant testified to his challenging upbringing, IQ testing scores, head trauma, and his substance use until his arrest in September 1979. The defendant also testified about his relationship with his codefendant, Girvies Davis.

¶ 16　The defendant testified that on the night of Sepmeyer's murder, he and Davis were "driving around, looking for something to steal or somebody to rob." The pair then stopped at Sepmeyer's home. The defendant stated he was waiting in the car while Davis entered the home. Davis then piled items from the house at the back door, and the defendant placed them into the trunk of the car. After loading the trunk, the defendant testified that Davis instructed him to enter the home's back room and check for other items of potential value that he had left. The defendant testified that at the time of his entry into the home, he was unaware that anyone was home or that anyone had been killed. During his testimony, the defendant expressed remorse for his involvement in the crimes he and his codefendant, Davis, committed.

---

[1]The Honorable Sarah Smith granted the defendant leave to file his successive petition, found a substantial showing, and set the matter for an evidentiary hearing. However, on June 9, 2021, the matter was reassigned to the Honorable Neil Schroeder, who held the evidentiary hearing and reversed Judge Smith's previous ruling granting the defendant leave to file the successive petition.

¶ 17     Concerning his sentencing proceedings, the defendant testified that during his sentencing hearing, he wished to testify and that his counsel's statement to the contrary was false. The defendant also testified that he wanted his mother, as well as his psychologist, Cheryl Prost, who were both present at the hearing, to testify, but they were not called.

¶ 18     Dr. James Garbarino testified on behalf of the defense as an expert in developmental psychology. Dr. Garbarino testified that he was asked to review the defendant's personal history, his PSI, and the psychological reports prepared by Dr. Raza and Ms. Prost. Dr. Garbarino also conducted his own interview with the defendant to assess how the defendant's life experience influenced his development and behavior prior to his incarceration. Dr. Garbarino testified that, in his opinion, the defendant's IQ and personal history, including his abuse, substance use, and limited education, "slowed his path of development." Based on interviews and the testimony of the defendant, Dr. Garbarino stated that he believed the defendant's "characteristics" and "prior experience" made the defendant vulnerable to negative influence and that, in his professional opinion, the defendant should have been presumed capable of rehabilitation. However, Dr. Garbarino also testified that he did not review the defendants' school reports, medical reports related to his head injury, or police reports. Moreover, Dr. Garbarino testified that his opinions about the defendant's relationship with Davis were based on the defendant's own testimony and the prior reports he reviewed, which found that the defendant has a high need for approval. The State, in response, produced no evidence and rested on the transcripts. The circuit court then reserved its ruling until it received and reviewed the supplemental briefs to be submitted by both the defense and the State.

¶ 19     The defendant, in his supplemental post-hearing brief filed May 26, 2022, argued that his life sentence without parole for a crime committed at age 17 violates the proportionate penalties

7

clause as applied to his case because it fails to account for his youth, his limited culpability, and his demonstrated capacity for rehabilitation. The defendant asserted that at the February 22, 2022, evidentiary hearing, new evidence showed that he was, at most, accountable rather than directly responsible for the murder, because he did not know the victim was present, and learned of her death only after his arrest, facts never presented at his sentencing hearing. The defendant argued that Dr. Garbarino's testimony established that the defendant's adolescent brain development, intellectual limitations, trauma, and susceptibility to older influences significantly reduced his culpability and made rehabilitation likely, a conclusion the defendant argues was reinforced by decades of documented personal growth and remorse while incarcerated. Moreover, the defendant argued that Illinois precedent holds that sentencing youthful offenders, especially those convicted under accountability theories, to life without parole is constitutionally disproportionate when it ignores rehabilitation and shocks the moral sense of the community.

¶ 20    The State responded in its supplemental post-hearing brief filed August 15, 2022, that the defendant's claim should be denied because it was waived, meritless, and inapplicable to the facts of the case. First, the State contended that the claim is untimely because the proportionate penalties clause existed at the time of his sentencing and was not raised for more than 40 years, and the defendant failed to establish the required cause-and-prejudice to excuse the delay. Alternatively, the State asserted that the defendant's sentence does not violate the proportionate penalties clause because he received a discretionary life sentence, not a mandatory one, and the sentencing court properly considered his youth and potential for rehabilitation before imposing the sentence. The State further argued that the proportionate penalties clause does not apply to the defendant's case because the proportionate penalties clause is coextensive with the eighth amendment under *People v. Patterson*, 2014 IL 115102, and because our court and the Illinois Supreme Court rejected his

8

eighth amendment claim, his proportionality claim fails as well. Lastly, the State maintained that all other claims raised by the defendant were outside the scope of the proceedings and that the defendant failed to prove any substantial constitutional violation.

¶ 21 On September 9, 2022, the defendant filed a reply brief arguing that his claim was properly before the court, that it had merit, and that it applied to his case. The defendant first argued that the claim was not waived, because the circuit court already rejected the State's waiver argument at the second stage. The defendant further asserted that he showed cause and prejudice because the claim was not reasonably available until after *Miller* and subsequent Illinois appellate decisions recognizing proportionate penalties challenges by youthful offenders, and prejudice resulted from counsel's failure to present critical mitigating evidence at sentencing. The defendant next asserted that the proportionate penalties clause provides greater protection than the eighth amendment. Lastly, the defendant argued that the proportionate penalties clause was violated because the sentencing court failed to consider the extensive mitigating evidence presented at the February 22, 2022, hearing.

¶ 22 On November 22, 2022, the circuit court reconvened to hear arguments based on the evidence and supplemental briefings presented by the parties. The defendant argued that his sentence violates the proportionate penalties clause because the trial court erred when it sentenced him to life without parole without considering his rehabilitative potential, given the objective of restoring him to a useful citizen. The State argued that the defendant's claim was waived because the proportionate penalties clause existed at the time of the defendant's initial 1981 sentence. The State also argued that the proportionate penalties clause was not violated, because it is coextensive with the eighth amendment. And because both the appellate court and the Illinois Supreme Court

examined the defendant's sentencing hearing and found no eighth amendment violation occurred, the circuit court should extend the supreme court's holding to his proportionate penalties claim.

¶ 23 Following the evidentiary hearing, supplemental briefings and oral arguments by the parties, on February 15, 2023, the circuit court entered a written order vacating the November 14, 2019, order granting the defendant leave to file a successive postconviction petition. The circuit court found that after the defendant's successive petition was allowed to proceed and the State's motion to dismiss was denied, the Illinois Supreme Court decided *People v. Dorsey*, 2021 IL 123010. There, the court found, "*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123010, ¶ 74. Additionally, it found that the defendant could have raised his proportionate penalties clause claim on direct appeal or during his previous postconviction petitions. Moreover, the circuit court reasoned that the defendant's reliance on *Othman* was misplaced, as the defendant was sentenced to discretionary life imprisonment, not a *de facto* life sentence based in part on the imposition of a mandatory firearm enhancement. Thus, the circuit court found that the defendant failed to "demonstrate sufficient cause to permit the filing of the proposed successive petition." Thereafter, the defendant filed a notice of appeal, challenging the denial of his motion for leave to file his successive petition.

¶ 24                                    II. ANALYSIS

¶ 25 On appeal, the defendant contends the circuit court committed reversible error by *sua sponte* vacating its earlier order granting leave to file his successive petition after the petition had already been filed and litigated through all statutory stages of the Act. He contends that once leave was granted, the court lacked authority to revisit the cause-and-prejudice determinations, particularly after the State's participation in the third-stage hearing. The defendant asserts that

10

*People v. Canizalez-Cardena*, 2020 IL App (4th) 180212, confirms that such post-litigation reconsideration is impermissible. The defendant alternatively argues that, if this court finds that the reconsideration was permissible, the circuit court erred in finding that the defendant failed to establish "cause" because his proportionate penalties claim arose from new developments in Illinois law, which the defendant contends constitute a growing consensus against life-without-parole sentences for juvenile offenders. In doing so, the defendant relies on *People v. Buffer*, 2019 IL 122327, and on changes to an Illinois sentencing statute (730 ILCS 5/5-4.5-105 (West 2020)), which require consideration of youth-related mitigating factors during sentencing and reduce mandatory minimum penalties for juvenile offenders convicted of murder. Lastly, the defendant contends that his natural life sentence for the murder committed when he was 17 years old violates the Illinois Constitution's proportionate penalties clause, because the sentencing court failed to review "all of the relevant characteristics that accompanied his youth at the time of the offenses," and erroneously found that "he could not be rehabilitated."

¶ 26    The State counters that the circuit court properly exercised its inherent authority to reconsider and vacate its earlier order granting leave to file the successive petition after determining, as a matter of law, that the defendant failed to satisfy the statutory cause-and-prejudice test. The State contends that *Canizalez-Cardena* is distinguishable from the present case because, unlike that case, the defendant here filed a proper motion for leave, and "he received notice of, appeared for, and testified at third-stage proceedings in open court." The State further highlighted that the circuit court independently reassessed "cause" and did not indicate that it relied on the State's arguments, input, or its motion to dismiss. Furthermore, according to the State, the defendant's asserted "cause" in the circuit court rested in part on *Othman*, which has since been vacated and is therefore void. The State further argues that *Dorsey* has foreclosed the defendant's

11

asserted "cause" because *Dorsey* found that the "announcement of a new substantive rule under the eighth amendment" in *Miller v. Alabama*, 567 U.S. 460 (2012), "[did] not provide cause for a defendant to raise a claim under the proportionate penalties clause." *Dorsey*, 2021 IL 123010, ¶ 74. The State further contends that recent legislative reforms regarding juvenile sentencing and parole eligibility apply prospectively only and do not apply to the defendant's situation. Additionally, the State maintains that the defendant's proportionate penalties claim is forfeited, barred by *res judicata* and the law-of-the-case doctrine, and substantively meritless because the original sentencing court properly considered both the seriousness of the offense and his rehabilitative potential when imposing the discretionary life sentence.

¶ 27 In reply, the defendant maintains that the circuit court lacked authority to vacate its earlier order granting leave to file the successive petition. The defendant argues that this determination must be made independently and without the State's participation, and the State's involvement here irreparably tainted the cause-and-prejudice determination the court later made. Moreover, the defendant contends that *Canizalez-Cardena* forecloses such post-litigation reconsideration. The defendant further contends that he established cause, as his claim arose from changes in Illinois law and societal understandings of youth sentencing, none of which were reasonably available at the time of his earlier petitions. The defendant also rejects the State's reliance on *Dorsey*, arguing that his proportionate penalties claim is distinct from an eighth amendment claim and was properly developed in the trial court. Lastly, the defendant asserts that his claim has merit and is not forfeited or barred by *res judicata* or the law-of-the-case doctrine.

¶ 28 The Post-Conviction Hearing Act allows an incarcerated defendant to challenge his conviction by asserting that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2022). The Act sets forth a three-stage process for adjudicating a

defendant's claims. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). At the first stage, the circuit court independently reviews the petition to determine whether it is frivolous or is patently without merit. *Id.*; 725 ILCS 5/122-2.1 (West 2022). If the petition is not dismissed as frivolous or patently without merit, it proceeds to the second stage of the proceedings, at which an indigent defendant is entitled to appointed counsel, the petition may be amended, and the State may answer or move to dismiss. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); 725 ILCS 5/122-5 (West 2022). At this stage, the trial court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. If no showing is made, the petition is dismissed. *Id.* However, if a substantial showing of a constitutional violation is made, the petition advances to the third stage, and the trial court conducts an evidentiary hearing. *Id.*

¶ 29 The Act is not a substitute for an appeal, but rather, a collateral attack on the final judgment. *People v. Edwards*, 2012 IL 111711, ¶ 21. Thus, where a petitioner has previously taken an appeal from a judgment of conviction, the ensuing judgment of the reviewing court will bar, under the doctrine of *res judicata*, postconviction review of all issues actually decided by the reviewing court, and any other claims that could have been presented to the reviewing court will be deemed waived. *Id.* The language of the Act and our own case law make clear that only one postconviction proceeding is contemplated under the Act. *Id.* ¶ 22. In the context of a successive postconviction petition, the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute. *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002). Only when fundamental fairness so requires will the strict application of this statutory bar be relaxed. *Id.* Fundamental fairness is established by satisfying the cause-and-prejudice test, which is codified in the Act. *Id.*; 725 ILCS 5/122-1(f) (West 2022).

¶ 30    To obtain leave of court to file a successive postconviction petition, the defendant must demonstrate cause for his failure to raise the claim in the initial petition and prejudice from that failure. 725 ILCS 5/122-1(f) (West 2022). For cause, the defendant must identify an objective factor that impeded his ability to raise a specific claim during the earlier postconviction proceedings. *Pitsonbarger*, 205 Ill. 2d at 460. For prejudice, the defendant must demonstrate that the claim not raised during the initial postconviction proceedings so infected the trial that the resulting conviction or sentence violates his due process rights. *People v. Wrice*, 2012 IL 111860, ¶ 48. Failure to state either cause or prejudice will be detrimental to a motion seeking leave to file a successive petition. *People v. Clark*, 2023 IL 127273, ¶ 47. A defendant should be denied leave of court to file a successive postconviction petition when it is clear, from a review of the successive petition and the submitted documentation, that the claims alleged by the defendant fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. *People v. Smith*, 2014 IL 115946, ¶ 35. It is the defendant's burden to establish a *prima facie* showing of cause and prejudice to be granted leave before further proceedings on his claims can follow. *People v. Bailey*, 2017 IL 121450, ¶ 24. Both elements of cause and prejudice must be satisfied for the defendant to prevail. *People v. Guerrero*, 2012 IL 112020, ¶ 15. This court reviews *de novo* the denial of a motion for leave to file a successive postconviction petition. See, *e.g.*, *Bailey*, 2017 IL 121450, ¶ 13.

¶ 31    The proportionate penalties clause provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11; *People v. Hilliard*, 2023 IL 128186, ¶ 20.

>       "A statute violates the proportionate penalties clause if either the penalty is harsher than
>
>       the penalty for a different offense containing identical elements (*People v. Sharpe*, 216 Ill.

14

2d 481, 521 (2005)) or 'the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Hilliard*, 2023 IL 128186, ¶ 20 (quoting *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)).

¶ 32　As a preliminary matter, we note that the Illinois Supreme Court, in *Wilson*, 2023 IL 127666, has overruled its decision in *Holman*, 2017 IL 120655. In *Wilson*, the circuit court dismissed the defendant's motion to file a successive postconviction petition, in which the defendant raised both an eighth amendment and a proportionate penalties claim under the Illinois Constitution. *Wilson*, 2023 IL 127666, ¶ 19. On appeal, the appellate court reversed the circuit court's order and remanded the case for a new sentencing hearing with instructions to consider the defendant's youth and its attendant characteristics, after finding that the defendant established cause and prejudice, relying in part on *Holman*. The appellate court, after granting the defendant relief on his eighth amendment claim, did not address his proportionate penalties claim. *Id.* On appeal, the Illinois Supreme Court held that the defendant failed to satisfy the cause-and-prejudice requirements for filing a successive petition under the Act, as to his eighth amendment claim. *Id.* ¶ 41. In doing so, the court also determined that *Holman*'s holding did not comport with the United States Supreme Court's decision in *Jones*, which found that the Constitution does not require an explicit finding of permanent incorrigibility, provided that the sentencing court had the discretion to consider youth and its mitigating qualities. *Jones*, 593 U.S. at 104-05; *Wilson*, 2023 IL 127666, ¶ 42. However, because the appellate court did not address the defendant's proportionate penalties claim, the case was remanded to the appellate court to determine whether the cause-and-prejudice test was satisfied with respect to that claim. *Wilson*, 2023 IL 127666, ¶ 46. Similar to the circuit court's reasoning here, on remand, the appellate court concluded that, based on *Dorsey*, the defendant failed to show the requisite cause to satisfy the cause-and-prejudice test when the

15

defendant failed to provide a "compelling reason for failing to raise his proportionate penalties clause claim on direct appeal or in his original postconviction petition." *People v. Wilson*, 2023 IL App (3d) 200181-UB, ¶ 14.[2]

¶ 33　We now address the defendant's argument, in which he relied on *Canizalez-Cardena*, to argue that the circuit court erred by *sua sponte* vacating its earlier order granting him leave to file his successive petition after his claim had been litigated through the third-stage evidentiary hearing. As noted in *Bailey*, the circuit court is capable of determining whether the defendant's motion for leave to file a successive postconviction petition made a *prima facie* showing of cause and prejudice, so there is "no reason for the State to be involved" in its preliminary and independent screening. *Bailey*, 2017 IL 121450, ¶ 25. Accordingly, the court held that "the State should not be permitted to participate at the cause and prejudice stage of successive postconviction proceedings" because "[t]he motion for leave to file is directed to the court, and it is the court that must decide the legal question" of whether a defendant has satisfied the requirement of showing cause and prejudice. *Id.* ¶ 24.

¶ 34　In *Canizalez-Cardena*, the defendant filed a *pro se* successive petition for postconviction relief. *Canizalez-Cardena*, 2020 IL App (4th) 180212, ¶ 14. Within the *pro se* petition, the defendant asked the circuit court for leave to file the successive petition. *Id.* Initially, the circuit court "allowed defendant leave to file his successive postconviction petition and appointed the public defender's office to represent defendant." *Id.* ¶ 16. Months later, the defendant's "appointed counsel filed an amended successive motion for postconviction relief," and "the State filed a motion to dismiss the amended postconviction petition." *Id.* ¶¶ 17-18. Without reaching the arguments made by the State, "other than its argument defendant's appointed counsel could not

---

[2]Nonprecedential Rule 23 orders issued on or after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

incorporate defendant's *pro se* petition in the amended petition as an exhibit," the circuit court "allowed the State's motion but gave defendant leave to file a second amended successive postconviction petition without incorporating defendant's *pro se* petition." *Id.* ¶ 18. After a new counsel entered their appearance and filed a second amended successive petition, the State filed a motion to dismiss the second amended successive petition. *Id.* ¶¶ 19-20. The circuit court subsequently "found it erred in granting defendant leave to file his successive postconviction petition without defendant filing a motion separate from the successive petition itself requesting leave." *Id.* ¶ 21. The circuit court also noted that "it had not made a finding defendant had complied with the 'cause and prejudice' test." *Id.* Thereafter, the circuit court dismissed the defendant's successive petition and vacated the appointment of his defense counsel. *Id.* On appeal, the appellate court found that the circuit court's order granting the defendant "leave to file a successive postconviction petition [was] not an interlocutory order that may be reversed once the State has filed a motion to dismiss the successive petition." *Id.* ¶ 29. The court also found that the circuit court's reasoning for vacating was flawed because our supreme court's decision in *People v. Tidwell*, 236 Ill. 2d 150, 158 (2010), made clear "a defendant is not required to file a separate motion for leave to file a successive postconviction petition but only has to receive leave of court." *Canizalez-Cardena*, 2020 IL App (4th) 180212, ¶ 33.

¶ 35     Here, as in *Canizalez-Cardena*, the circuit court granted the defendant leave to file his successive postconviction petition, and the defendant filed his petition. Following the filing of the petition, the State moved to dismiss the petition. However, the circuit court, here, took an additional step and advanced the petition to the third stage after denying the State's motion to dismiss. Subsequently, the circuit court conducted a full evidentiary hearing and accepted the parties' post-hearing briefs before it revisited its order granting the defendant leave to file his

17

petition. We agree with the reasoning set forth in *Canizalez-Cardena* and find that the circuit court erred in vacating its prior order granting leave after the State filed a motion to dismiss and a full evidentiary hearing was held. *Id.* ¶¶ 29-32. Although the circuit court *sua sponte* vacated its order arguably on a basis not raised by the State, we find the vacatur was improper where the cause proceeded to a third-stage evidentiary hearing and the circuit court received considerable input from the State on the matter. Accordingly, we reverse the portion of the circuit court's order vacating the original granting of leave.

¶ 36    We note that once leave was granted and the matter proceeded through an evidentiary hearing, the circuit court was authorized to resolve the petition by applying controlling law to the claim presented. See *Bailey*, 2017 IL 121450, ¶¶ 24-25 (leave to file a successive postconviction petition is a threshold inquiry that does not address the merits of the claims). Had the circuit court simply proceeded to adjudicate the petition following its initial grant of leave—rather than vacating that determination—it could have concluded that binding precedent foreclosed relief without committing procedural error. Although the circuit court employed an improper procedural mechanism by vacating its November 14, 2019, order granting leave, that error does not preclude the resolution of the petition itself.

¶ 37    Here, in the interest of judicial economy and where the record on appeal is complete, we find no need for remand where the defendant is not entitled to relief as a matter of law. *Id.* ¶ 42. Although restoration of leave permits review of the claim, it does not insulate the claim from established principles governing successive postconviction proceedings. Where our review of the defendant's claim is *de novo*, we perform the same analysis the circuit court would perform with no deference shown to the circuit court's judgment. *Beauchamp v. Dart*, 2022 IL App (1st) 210091, ¶ 8.

18

¶ 38 We have considered the defendant's successive postconviction petition, the arguments raised in his petition and on appeal, and the full record on appeal, including the testimony and evidence presented at the third-stage evidentiary hearing. Additionally, we have considered the body of law that has evolved since the circuit court initially advanced the defendant's proportionate penalties claim to the third stage of the postconviction proceedings. Taking into consideration the supreme court's decisions in *Dorsey*, *Clark*, and *People v. Moore*, 2023 IL 126461, we are compelled to conclude that the defendant is not entitled to relief where he cannot establish the requisite cause for failing to bring his proportionate penalties claim in his direct appeal or in his subsequent postconviction petitions.

¶ 39 In his brief, the defendant argues that the circuit court erred in finding that he failed to establish "cause" because, as he claimed in his motion for leave to file the successive petition, the proportionate penalties claim arose from new developments in Illinois law that he could not have relied on in his direct appeal or initial petition. In his brief, the defendant relies on *Buffer*, amendments to section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2020)), and temporary changes to parole eligibility under section 5-4.5-110(b) of the Unified Code of Corrections (*id.* § 5-4.5-110(b)), which he argues constitute a growing consensus against life-without-parole sentences for juvenile offenders.

¶ 40 Here, the defendant was sentenced to discretionary natural life, a fact that is dispositive under the governing case law. As explained in *Dorsey*, *Clark*, and *Moore*, the unavailability of *Miller* and its progeny does not establish cause for a proportionate penalties claim where Illinois law already recognized youth as a relevant sentencing consideration long before *Miller*. *Dorsey*, 2021 IL 123010, ¶ 74; *Clark*, 2023 IL 127273, ¶ 61; *Moore*, 2023 IL 126461, ¶¶ 40-42.

¶ 41    This principle applies with even greater force where, as here, the defendant received a discretionary life sentence. In *Jones v. Mississippi*, 593 U.S. 98 (2021), the United States Supreme Court clarified that the eighth amendment requires only that a sentencing court have discretion to consider youth and its attendant characteristics; it does not require any particular findings, explanations, or conclusions regarding incorrigibility. *Id.* at 105-09. Consistent with *Jones*, our supreme court later held that *Holman*—which had imposed additional requirements on discretionary juvenile life sentences—was incorrectly decided and expressly overruled it. *Wilson*, 2023 IL 127666, ¶¶ 41-42.

¶ 42    Following remand in *Wilson*, the appellate court addressed the defendant's remaining proportionate penalties claim and concluded that *Miller*, *Buffer*, and related eighth amendment developments did not provide cause for failing to raise a state constitutional claim earlier. *Wilson*, 2023 IL App (3d) 200181-UB, ¶ 14. Relying on *Dorsey* and *Clark*, the court explained that intervening eighth amendment jurisprudence "does nothing to explain why" the defendant failed to raise a proportionate penalties claim on direct appeal or in prior postconviction proceedings, particularly where the claim was available under Illinois law at the time. *Id.*

¶ 43    The same reasoning governs this case. The defendant previously litigated his juvenile sentencing claims through successive postconviction proceedings, and this court ultimately concluded that his sentencing hearing complied with *Miller* as it was then understood. *Holman*, 2016 IL App (5th) 100587-B, ¶¶ 46, 53, *aff'd*, 2017 IL 120655. Although the Illinois Supreme Court's decision in *Holman* has since been overruled, that subsequent clarification of eighth amendment doctrine does not supply cause to relitigate a claim that was available—and, in substance, already addressed—at the time of sentencing, on direct appeal, or in the defendant's earlier postconviction proceedings. See *Dorsey*, 2021 IL 123010, ¶¶ 70-74.

¶ 44    Nor does the defendant's reliance on *Buffer* or later statutory enactments alter this conclusion. As *Dorsey* and its progeny make clear, the fact that later decisions may provide "helpful support" or a more favorable analytical framework does not establish cause where the underlying proportionate penalties claim could have been raised earlier. *Dorsey*, 2021 IL 123010, ¶ 74. Because the defendant's sentence was imposed under a discretionary scheme that permitted consideration of youth, and because Illinois law long recognized youth as a mitigating factor under the proportionate penalties clause, the defendant had the essential legal tools necessary to raise his present claim at an earlier stage.

¶ 45    Accordingly, having considered the defendant's successive postconviction petition, the arguments raised in his petition and on appeal, and the full record on appeal, including the testimony and evidence presented at the third-stage evidentiary hearing, we find the defendant is not entitled to relief where, as a matter of law, he has failed to establish cause as it applies to his proportionate penalties claim. Thus, the proper disposition is therefore to reverse the portion of the circuit court's order vacating the original granting of leave while affirming the denial of postconviction relief.

¶ 46                          III. CONCLUSION

¶ 47    The circuit court erred in vacating its prior order granting the defendant leave to file a successive postconviction petition, and that order is reversed. Reversal of the vacatur restores the validity of the original grant of leave. However, the defendant failed to establish cause for raising his proportionate penalties claim in a successive proceeding, where his life sentence was imposed under a discretionary sentencing scheme, and *Miller* and its progeny do not provide a basis for reviving a proportionate penalties challenge. Accordingly, the proper disposition is therefore to reverse the vacatur while affirming the denial of postconviction relief.

21

¶ 48    Affirmed in part and reversed in part.